WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CWT Canada II Limited Partnership, et al., | No. CV-16-02577-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Kevin J. Bridges, et al., | |
| Defendants. | |
| Tony Ker, | |
| Counterclaimant, | |
| v. | |
| CWT Canada II Limited Partnership, et al., | |
| Counterdefendants. | |

Pending before the Court are Plaintiffs' Motion to Disqualify Wilenchik & Bartness, P.C. from Representing Defendant Richard Carrigan Because of a Non-Waivable Conflict of Interest, (Doc. 54), Defendants Richard Carrigan and Tony Ker's Motion to Disqualify, (Doc. 63), and Plaintiffs' Motion for Leave to File Sur-Reply in Opposition to Motion to Disqualify, (Doc. 75). For the following reasons, the Court denies the three motions.[1]

---

[1] Defendants have requested oral argument. The request is denied because the parties have had an adequate opportunity to discuss the law and the facts, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Inv'rs Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

**BACKGROUND**

Though the parties use strong and in some cases inflammatory language to describe differing accounts of the background to this lawsuit, the essential facts for purposes of these motions are not greatly in dispute.

Plaintiffs controlled a company called Changing World Technologies ("CWT"), which itself was a holding company for another company called Renewable Environmental Solutions, LLC ("RES"). RES was in the renewable diesel fuel business. In the course of this business it received certain tax credits from the United States Government. In December of 2012, Plaintiffs decided to reorganize CWT. The plan was for a company called GEM Holdco, LLC ("GEM") to buy 60% of CWT after a period of time, and subsequently sell it to another company called RDX.[2] Defendants Tony Ker and Richard Carrigan served on RDX's board; non-party Dennis Danzik served as its CEO.

Apparently, GEM and RDX had an agreement that RDX would only buy its share of CWT through GEM, and not directly from Plaintiffs. But Plaintiffs instead sold CWT to RDX directly. As part of this purchase, RDX agreed to remit to Plaintiffs tax credits that CWT had accrued, but not yet received, as of the purchase date.

GEM filed a lawsuit in New York state court, suing CWT, RDX and Danzik for tortious interference, breach of contract and other related claims based on the sale of CWT directly to RDX. Schlam Stone & Dolan ("Schlam"), the law firm representing Plaintiffs here, represented all the defendants in the New York action. Subsequently, GEM filed an additional claim of defamation adding Ker and Carrigan based on a press release Danzik had released about GEM. Schlam represented Ker and Carrigan as well on this claim. The defamation claim was later dropped, and with it, Ker and Carrigan were dropped as defendants. Subsequently, Schlam withdrew from representing RDX and Danzik, and CWT (still represented by Schlam) sued RDX and Danzik over an

---

[2] At the time, RDX was known as Ridgeline Energy Services, Inc.; for sake of simplicity and in accordance with the parties' usage the Court will simply refer to it as RDX.

- 2 -

alleged theft of the tax credits that RDX was supposed to remit to CWT.

There are currently three related lawsuits pending in this district. In *CWT Canada II LP et al v. Elizabeth Danzik et al*, No. CV-16-00607-DGC, the Plaintiffs are suing Danzik's wife and the Danziks' LLC based on their role in the alleged theft of the tax credits. In *Dennis M. Danzik et al v. CWT Canada II Limited Partnership et al*, No. CV-17-00969-JAT, Danzik and RDX sue the Plaintiffs (and certain other parties) for alleged fraud relating to the sale of CWT to RDX. And in this action, also based on the alleged theft of tax credits, Plaintiffs sue several members of RDX's board, as well as a company known as Danzik Applied Sciences, LLC ("DAS"). It is also asserted that the United States Attorney's Office is investigating Dennis Danzik for the alleged theft of tax credits.

The Defendants in this matter are represented by Wilenchik & Bartness PC ("WB"). Plaintiffs filed a motion to disqualify WB from representing Carrigan, because WB also represents Danzik in one of the other actions in this district, as well as in the U.S. Attorney's Office investigation. Plaintiffs assert Danzik and Carrigan have adverse interests.

Schlam represents the Plaintiffs in this matter. Concurrent with their response to Plaintiffs' motion to disqualify, Defendants filed a motion to disqualify Schlam on the basis of Schlam's prior representation, in the New York case, of Defendants Ker and Carrigan.

**DISCUSSION**

**I.    Legal Standard**

The United States District Court for the District of Arizona has adopted the Arizona Rules of Professional Conduct as its ethical standards. L.R. Civ. P. 83.2(e). The Court therefore applies Arizona ethical rules in evaluating motions to disqualify counsel. *See Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011).

/ / /

To avoid the use of ethical rules for the tactical disqualification of opposing counsel, "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (explaining that disqualification motions should be subject to "particularly strict scrutiny" because of their potential for abuse); *see also In re Cty. of L.A.*, 223 F.3d 990, 996 (9th Cir. 2000) ("A motion to disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice."). The moving party has the burden of showing that the Court should disqualify an attorney from representing his client. *Alexander v. Superior Court*, 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984); *Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 377, 93 P.3d 1086, 1093 (Ct. App. 2004).

"To preserve the integrity of the judicial system[,] close or doubtful cases should be resolved in favor of disqualification." *Richards v. Holsum Bakery, Inc.*, No. CV09-00418-PHX-MHM, 2009 WL 3740725, at *6 (D. Ariz. Nov. 5, 2009). However, because of the "great prejudice often associated with an enforced change of counsel, courts applying these standards have granted disqualification only when the moving party has demonstrated substantial and irreparable harm growing out of the ethical violation." *Id.* (quoting *Complaint of Korea Shipping Corp.*, 621 F. Supp. 164, 169 (D. Alaska 1985)). "Whenever possible the courts should endeavor to reach a solution that is least burdensome upon the client or clients." *Alexander*, 141 Ariz. at 161. The Court has no "rule of automatic disqualification," and will instead consider a number of factors in determining whether disqualification is warranted. *Research Corp. Techs., Inc. v. Hewlett-Packard Co.*, 936 F. Supp. 697, 701 (D. Ariz. 1996). These factors include "(1) the nature of the ethical violation, (2) the prejudice to the parties, including the extent of actual or potential delay in the proceedings, (3) the effectiveness of counsel in light of the violations, . . . (4) the public's perception of the profession" and "whether or not a motion to disqualify has been used as a tactical device or a means of harassment." *Id.* at 703.

///

## II. Analysis

### A. Plaintiffs' motion to disqualify WB is denied.

Plaintiffs assert that WB cannot ethically represent both Defendant Carrigan and non-party Danzik because the two have adverse interests. The applicable ethical rule states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if each affected client gives informed consent, confirmed in writing, and:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law; and
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

Arizona Rules of Professional Conduct, Ethical Rule 1.7.

Under this rule,

> A conflict of interest will be found to exist "if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests." ER 1.7, Comment 8. In such a situation, the conflict effectively forecloses alternatives that would otherwise be available to the client.

*Jamieson v. Slater*, No. CV 06-1524-PHX-SMM, 2006 WL 3421788, at *6 (D. Ariz. Nov. 27, 2006).

Plaintiffs point out that Danzik has testified that all payments made by RDX to Danzik or his LLC were approved by the RDX Board and that the RDX Board likewise voted to retain the tax credits rather than remit them to CWT. Ker has also testified to this. Plaintiffs contend that Carrigan's only defense to liability as a Board member is to contradict Danzik's testimony, thus placing Carrigan and Danzik in an adverse relationship. It is not apparent, however, that Carrigan will either testify or decline to testify truthfully if, in fact, the RDX Board voted to retain the tax credits.

Assuming without deciding that this nevertheless creates a conflict of interest under Ethical Rule 1.7, Plaintiffs do not have standing to bring a motion to disqualify WB on this basis. "As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1988); *see also Jamieson*, 2006 WL 3421788, at \*4 ("The majority view on the standing issue is that only a current or former client of an attorney has standing to complain of an attorney's representation of interests adverse to that current or former client."). None of Plaintiffs' arguments for departing from this general rule are persuasive.

First, although the Arizona Rules of Professional Conduct impose a reporting requirement on attorneys who are aware of ethical violations, this requirement does not give every opposing party standing to file a motion to disqualify. For one thing, it is the *party* that must have standing, while it is the *attorney* to whom the ethical duty attaches. *See Xcentric Ventures, LLC v. Stanley*, No. CV-07-00954-PHX-NVW, 2007 WL 2177323, at \*3 (D. Ariz. July 27, 2007) ("A reporting obligation is not an 'injury in fact,' and even if it were, the focal point of the 'injury in fact' analysis is the party, not the attorney, so the attorney's obligation cannot logically determine the party's standing[.]" (internal citations omitted)). For another, to grant standing on this basis would swallow the general rule that only clients or former clients may move for disqualification on the basis of a conflict of interest. Further, "using a state reporting requirement in a rule of professional conduct as a basis for federal court standing is dubious, because standing is a

jurisdictional issue and 'states have no power directly to enlarge or contract federal jurisdiction.'" *Schnider v. Providence Health & Servs.*, No. 3:15-cv-00038-SLG, 2016 WL 158494, at *2 (D. Alaska Jan. 12, 2016) (quoting *Fielder v. Clark*, 714 F.2d 77, 80 (9th Cir. 1983)).

Second, the possibility that Plaintiffs could reach a settlement with Carrigan in exchange for his cooperation against Danzik, if it were not for WB's representation of both, is too speculative to support standing. Carrigan has apparently chosen to be represented by WB, and has filed an Answer to the Second Amended Complaint containing both negative and affirmative defenses. There is no indication that any specific settlement offer has been made. And "disqualification simply cannot be based on mere speculation that 'a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.'" *Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591, 603 (E.D. Va. 2009) (quoting *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992)).

Finally, any ethical violation here is not so "manifest and glaring" as to confer standing on Plaintiffs. *See Jamieson*, 2006 WL 3421788, at *4 ("[E]ven courts embracing the majority rule acknowledge the possibility of non-client standing where an 'ethical violation' is 'manifest and glaring' or 'open and obvious,' confronting the court with a 'plain duty to act.'" (quoting *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976)). The possibility of settlement, as discussed above, is speculative. And contrary to Schlam's assertions, Carrigan does have another defense available to him apart from contradicting Danzik. It is a defense that Defendants appear to assert in their answer—that Danzik's actions, as approved by the Board, were justified. Whether or not this defense remains viable in light of the ongoing proceedings in New York, it is the defense that Carrigan has put forward. At this time, there is no showing of such a severe ethical violation that the Court would be compelled to step in and sever Carrigan's relationship with WB at the behest of Schlam.

Accordingly, Plaintiffs do not have standing to move to disqualify WB.

**B.     Defendants' motion to disqualify Schlam is denied.**

Defendants, in turn, seek to remove Schlam based on Schlam's prior representation of Ker and Carrigan. The applicable rule here is Ethical Rule 1.9(a), which states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

"For a conflict to exist pursuant to this provision, the moving party must show: (1) the existence of an attorney-client relationship; (2) that the former representation was 'the same or substantially related' to the current litigation; and (3) that the current client's interests are 'materially adverse' to the former client's interests." *Roosevelt Irrigation Dist.*, 810 F. Supp. 2d at 945 (quoting *Foulke v. Knuck*, 162 Ariz. 517, 520–21, 784 P.2d 723, 726–27 (Ct. App. 1989)). There is no dispute here that there was an attorney-client relationship between Schlam and Ker/Carrigan, and that the interests of Schlam's current clients are "materially adverse" to those of Schlam's former clients.

Accordingly, whether Schlam's representation of Plaintiffs against Ker and Carrigan constitutes a violation of Ethical Rule 1.9(a) depends on whether the former representation was the same or substantially related to the current litigation. "Matters are substantially related 'if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.'" *Roosevelt Irrigation Dist.*, 810 F. Supp. 2d at 945 (citing ER 1.9 cmt. 3). "Determining the scope of a matter requires an examination of the facts of a particular situation or transaction and the nature and degree of the lawyers' involvement." *Id.* (citing ER 1.9 cmt. 2).

Although this action and the New York action both relate broadly to the sale of CWT, the specific context of each is quite different. The claims against Ker and Carrigan here relate to their approval of the failure to remit the tax credits, and their ratification of

Danzik's alleged wrongdoing. The claims against Ker and Carrigan in the New York action were based on the allegedly defamatory press release Danzik had issued against GEM. The facts underlying each action are different, as are the legal questions at issue.

Nor does it appear, based on the scope of the prior representation, that confidential information relevant to this matter was obtained. The claims against Ker and Carrigan were dismissed at the motion to dismiss stage. (Doc. 72-9 at 14.) Schlam attorney Jeffrey Eilender has filed a declaration here indicating that he never spoke with Carrigan; that he only spoke to Ker, in Ker's capacity as RDX's chairman, regarding GEM's claims against RDX; and that neither Carrigan nor Ker disclosed any confidential or private information as to them. (Doc. 72 at 9.) Defendants present no evidence, but only argument, that Schlam did receive any such confidential information.

**CONCLUSION**

Both sides' motions to disqualify are denied. Additionally, as Defendants' motion is denied, Plaintiffs' motion to file a sur-reply is denied as moot.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Disqualify Wilenchik & Bartness, P.C. from Representing Defendant Richard Carrigan Because of a Non-Waivable Conflict of Interest, (Doc. 54), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Richard Carrigan and Tony Ker's Motion to Disqualify, (Doc. 63), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Sur-Reply in Opposition to Motion to Disqualify, (Doc. 75), is **DENIED**.

Dated this 17th day of August, 2017.

Honorable G. Murray Snow
United States District Judge